**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-2872

_____

JORDAN DONGARRA,

Appellant

v.

OFFICER D. SMITH; S.I.S. WORKER ON CAMERA;
S.I.S. WORKER ON CAMERA; UNITED STATES OF
AMERICA

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3:18-cv-01939)
District Judge: Honorable Jennifer P. Wilson

_____

Argued: September 29, 2021

Before: AMBRO, KRAUSE, and BIBAS, *Circuit Judges*

(Filed: March 1, 2022)

_____

David M. Zionts
Megan A. Crowley                    [ARGUED]
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, DC 20001

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue, N.W., Unit 26152
Washington, DC 20001

  *Counsel for Appellant*

Melissa A. Swauger
Navin Jani                          [ARGUED]
UNITED STATES ATTORNEY'S OFFICE
Middle District of Pennsylvania
228 Walnut Street, P.O Box 11754
Harrisburg, PA 17108

  *Counsel for Respondent*

_____

OPINION OF THE COURT

_____

BIBAS, *Circuit Judge*.

Judges are not superheroes. In the comics, caped crusaders right every wrong. But in real life, robed jurists cannot. A prison officer wrongly branded Jordan Dongarra a sex offender, putting him at risk of assault. But that risk never materialized. We cannot award damages to compensate him for an assault that never happened. And by the time he sued, the

prison had corrected the error, so he cannot get an injunction either. Thus, even though the officer violated Dongarra's rights, he has no remedy. We will affirm the District Court's dismissal.

## I. BACKGROUND

On this appeal from a motion to dismiss, we take the complaint's factual allegations as true. Dongarra robbed a bank, pleaded guilty, and went to prison. *United States v. Dongarra*, 2018 WL 1933409, at *1 (N.D. Ohio Apr. 24, 2018). In 2018, he was transferred to a new prison in Pennsylvania.

When he got there, he went through the prison's onboarding process, supervised by Officer Smith. As part of that process, Smith gave him an ID card and a T-shirt. Both mislabeled him a sex offender. The ID card bore the code "ROF," an acronym for "Registered Offender." App. 38. The shirt differed from those of other prisoners and was "know[n]" to be a "sex offender T-shirt." App. 39. What is more, the shirt falsely suggested that he had been imprisoned at Terre Haute, Indiana, "a sex offender prison." App. 32.

Dongarra protested. He denied being a sex offender and noted that he "could be killed" if prisoners mistook him for one. *Id.* So he asked for a new ID card and T-shirt. But Smith refused. Smiling, Smith said he did not care and that he "hope[d] [Dongarra] kn[e]w how to fight … and use a knife." App. 33. Dongarra appealed to other staff, who asked Smith for another T-shirt. But again Smith refused.

Branded by his ID and T-shirt, Dongarra had to explain the situation to other prisoners. He was so scared of them that he

skipped all his meals, "starved [him]self," and shed lots of weight. App. 33. He even stopped going out for recreation. All this made him feeble and unfocused. In short, he suffered "enormous amount[s] of pain physically, and mentally." *Id.*

Next, Dongarra filed a prison grievance. Though he never got a response, a few weeks later the prison finally replaced his ID card and T-shirt.

Dongarra then sued Smith and two unnamed officers, seeking damages and an injunction. He argued that the Constitution provides a damages remedy for his suffering, relying on *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). But the District Court dismissed. It barred damages, reasoning that no court had extended *Bivens* to cover similar facts. And it denied injunctive relief because Dongarra had not sued anyone who could fire or discipline Smith.

Now Dongarra appeals. He does not challenge the denial of an injunction. But he insists that he can sue for damages. He argues that his case fits within settled *Bivens* law. And even if it does not, he urges us to extend *Bivens* to cover his claim. But his arguments fail. Dongarra's case is meaningfully different from accepted *Bivens* cases. And "special factors" bar extending *Bivens* here. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)).

We review the District Court's dismissal de novo. *Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010). The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under § 1291.

## II. DONGARRA ALLEGES TWO DISTINCT
## EIGHTH AMENDMENT CLAIMS

To get damages, Dongarra must clear two hurdles. First, he must show that the prison violated his Eighth Amendment rights. Second, he must show that *Bivens* lets him sue for damages.

All too often, courts skip straight to step two, without first considering whether the government violated the Constitution. Though this approach is permissible, it has its downsides. *Cf. Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (letting courts consider another two-step analysis—qualified immunity—in either order).

For one, it skips a logical step: there is no need to consider a remedy unless the plaintiff has established an injury. Plus, when a judge recognizes a victim's injury, that recognition may have symbolic value for the victim, even if he gets no compensation.

Jumping ahead also stunts the development of constitutional law. Courts spend less time clarifying the scope of our rights. And that makes it harder for plaintiffs to defeat qualified immunity by showing that a right is "clearly established." *See Carroll v. Carman*, 574 U.S. 13, 16 (2014) (per curiam). Although plaintiffs need not find a case directly on point, they must cite "existing precedent" that puts "the … question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). But they cannot do that if courts do not analyze the Constitution.

This case illustrates the problem. Dongarra alleges that being mislabeled a sex-offender increased his risk of assault, subjecting him to cruel and unusual punishment. But the Third Circuit has no precedent on point. So he is forced to support his claim by citing out-of-circuit and nonprecedential opinions. Reply Br. 23–24. This lack of precedent makes it harder for him to clearly establish the right. We refuse to contribute to this problem. So we turn to Dongarra and his constitutional claims.

The Eighth Amendment bans "cruel and unusual punishments." When we parse his complaint, we see that Dongarra is alleging two distinct Eighth Amendment wrongs. First, he challenges the conditions of his confinement: living in prison while branded a sex offender, he says, made him anxious and stressed. Second, he challenges the prison's failure to protect him. Smith, he argues, was deliberately indifferent to the risk that other prisoners would assault a supposed sex offender.

Each claim fails, but for different reasons. The conditions-of-confinement claim fails because dubbing him a sex offender did not deprive him of a basic human need. So he does not allege a constitutional violation (step one). The failure-to-protect claim does allege a constitutional violation, but it still falls short because the Supreme Court has never recognized a damages remedy for an assault that never happened. So he has no *Bivens* claim (step two).

### III. DONGARRA'S CONDITIONS OF CONFINEMENT WERE CONSTITUTIONAL

Under the Eighth Amendment, prisoners must have "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). That right covers only "basic human needs," like food, sanitation, and medical care. *Id.* at 347–48.

Forcing Dongarra to live with a sex-offender T-shirt and ID card did not fall beneath this standard. "While we do not doubt [that] being labeled a sex offender caused [him] stress and anxiety, dubbing him a sex offender," without more, "does not constitute a deprivation of any basic human need." *Renchenski v. Williams*, 622 F.3d 315, 338 (3d Cir. 2010). Because the conditions of Dongarra's confinement were constitutional, we need not decide if he can sue for damages.

### IV. SMITH'S FAILURE TO PROTECT WAS UNCONSTITUTIONAL, BUT DONGARRA CANNOT RECOVER DAMAGES FOR AN ASSAULT THAT NEVER HAPPENED

Dongarra's second constitutional claim alleges that Smith failed to protect him from other prisoners. Smith knew that prisoners might harm Dongarra if they thought he was a sex offender. Yet he ignored that risk when he gave Dongarra a T-shirt and ID that implied he was. Though Dongarra states an Eighth Amendment violation, he lacks a remedy. No one assaulted him, so he cannot recover damages. And the prison has already replaced his ID and T-shirt, so it is too late to grant injunctive relief. Thus, we will affirm the District Court's dismissal of this claim too.

## A. Smith violated the Eighth Amendment by failing to protect Dongarra

Prison officials violate the Eighth Amendment when they act with "deliberate indifference to a substantial risk of serious harm to" a prisoner. *Farmer v. Brennan*, 511 U.S. 825, 828–29 (1994) (internal quotation marks omitted). The prisoner must show both that a prison officer ignored an *objectively* serious risk and that he was *subjectively* aware of that risk. *Id.* at 834, 839–40. Dongarra's complaint states both elements.

Dongarra faced an objectively serious risk of harm. The risk to his safety was "very likely to cause … needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). If other prisoners thought he was a sex offender, they might have assaulted or even killed him. That is as serious as it gets. "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S. at 347) (internal quotation marks omitted); *see also Shorter v. United States*, 12 F.4th 366, 372−73 (3d Cir. 2021).

Dongarra also pleads that Smith was subjectively aware of the risk of assault. That is, Smith was both "aware of facts from which" he could infer the sufficiently serious risk and that he actually "dr[e]w th[at] inference." *Farmer*, 511 U.S. at 837. Indeed, Dongarra told Smith that he was in danger of "being mistaken[] for a child molester or … sex offender" and thus "killed." App. 32. That plausible fear was enough to warn Smith of the serious risk Dongarra faced. *See Renchenski*, 622 F.3d at 326–27 (noting that the sex-offender label "is

stigmatizing" and can induce attacks on labeled inmates (internal quotation marks omitted)). It is obvious that branding Dongarra a sex offender could make him a target of prison violence. *Kedra v. Schroeter*, 876 F.3d 424, 442 (3d Cir. 2017) ("[W]e have regularly relied on the obviousness of risk as a permissible and highly relevant basis from which to infer actual knowledge [of risk].").

Plus, Smith *did* recognize that serious risk. He allegedly said he "hop[ed] [Dongarra] kn[e]w how to fight or make[ ] and use a knife." App. 33. This comment leaves no doubt that Smith knew of the real risk of violence.

Once Smith knew that prisoners might target Dongarra, he had to do more to protect him. *Farmer*, 511 U.S. at 832–33 (requiring prison officers to "take reasonable measures to guarantee [prisoners'] safety" (internal quotation marks omitted)). But Smith never did. So, if the complaint's allegations are true, he violated the Eighth Amendment.

## B.  Though Smith violated his rights, Dongarra has no remedy

Rights do not always have remedies. True, Blackstone famously wrote that "where there is a legal right[,] there is also a legal remedy." 3 William Blackstone, *Commentaries* *23. Though that maxim is a good principle, it is a poor practical guide. Often, someone can violate a right without paying full compensation. For instance, a valid claim can be blocked by sovereign or qualified immunity. So too here. Dongarra claimed administrative and injunctive relief, but he cannot get damages for any past harm.

*1. Administrative relief came; injunctive relief is no longer needed.* When a prison fails to protect a prisoner from a serious risk of harm, he can claim administrative relief or an injunction even before he is harmed. "[A] prisoner need not wait until he is actually assaulted before obtaining relief." *Helling*, 509 U.S. at 34. Prisoners are "entitled to relief under the Eighth Amendment when they prove[ ] threats to [their] safety." *Id.* at 33–34.

Dongarra had two avenues for relief. First, the prison's grievance process lets prisoners "seek formal review" of officers' conduct. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (quoting 28 C.F.R. §542.10 (2001)). That process seems to have worked here. True, Dongarra says he never got a formal response to his grievance. But the prison must have noted his complaints because, within a few weeks, it replaced his ID card and shirt. Second, Dongarra could sue for an injunction. Federal courts may award prisoners temporary restraining orders, preliminary injunctions, and permanent prospective relief. 18 U.S.C. §3626(a)(1)–(2). If the prison had not fixed the situation, a court could have stepped in. But the prison did, so we cannot.

*2.* Bivens *damages are unavailable.* Though injunctive relief was available while the prison was actively violating Dongarra's rights, he cannot get damages under *Bivens* for Smith's failure to protect him from an attack that never happened.

For most constitutional violations, unless a statute authorizes relief, damages are unavailable from the federal government or its officers. But Dongarra can point to no statute allowing his suit. He correctly notes that the Supreme Court has authorized suits against the government even without a statute

on point. But the Court has recognized these implied causes of actions for constitutional violations in only three contexts: *Bivens*; *Davis v. Passman*, 442 U.S. 228, 248 (1979); and *Carlson*, 446 U.S. at 16 n.1.

To preserve the separation of powers, the Court has "consistently rebuffed" efforts to extend *Bivens* further. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). That makes sense. The Constitution entrusts Congress, not the courts, with the power to create new federal causes of action and remedies.

Reflecting these concerns, the Supreme Court has outlined a cautious two-step approach to *Bivens* remedies. First, we ask whether this case presents a new context—whether it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Ziglar*, 137 S. Ct. at 1859. If it is, we then ask whether "special factors counsel[ ] hesitation" in extending *Bivens*. *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 18). This "inquiry must concentrate on whether the [j]udiciary is well suited, absent congressional action or instruction, to weigh the costs and benefits of allowing a damages action to succeed." *Id.* at 1857–58. If "we have reason to pause," we should not extend *Bivens*. *Hernandez*, 140 S. Ct. at 743.

At the first step, this case presents a new context. Although *Bivens* damages are available for some deliberate-indifference claims, this case is meaningfully different. *See Ziglar*, 137 S. Ct. at 1859. *Carlson* extended *Bivens* to remedy prison officers' failure to give medical assistance. 446 U.S. at 16 n.1. But there, the prisoner died because of the officers' neglect. Put differently, the risk that the prison officer ignored (death from not treating the prisoner's chronic asthma) in fact resulted. *Id.*

But here, Dongarra was not attacked. The potential harm that Smith allegedly ignored (assault by other prisoners) never happened. True, it may have been foreseeable that branding Dongarra a sex offender would cause him emotional and psychological harms. But Dongarra does not claim that Smith was indifferent to those risks. So this case presents a new context. *Ziglar*, 137 S. Ct. at 1859.

As such, we must proceed to the second step of the *Ziglar* test. We ask whether there are "special factors counselling hesitation." *Id.* at 1857. Here, there are two: (1) alternative remedies are available, and (2) the judiciary is poorly suited to balance the costs and benefits of allowing damages. *Id.* at 1857–58. Because these factors give us "reason to pause," we decline to extend *Bivens*. *Hernandez*, 140 S. Ct. at 743.

First, Dongarra had two avenues for relief: the prison grievance process and a federal injunction. The prison's grievance process lets prisoners "seek formal review" of officers' conduct. *Corr. Serves Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (quoting 28 C.F.R. § 542.10). It is not only well suited to preventing an assault on Dongarra, but also seems to have worked: he complained and got a new T-shirt. And even if that process had failed, he could have asked a court for an injunction ordering the prison to fix its mistake.

Second, creating a *Bivens* remedy would require us to make rules on when a prison official who is deliberately indifferent to one risk may be held liable for harms that result from a foreseeable yet distinct secondary risk. Dongarra did not allege that Smith was indifferent to the risk that labeling him a sex offender would lead to panic attacks, starvation, or loss of

sleep—only the risk of assault by other prisoners. While such a secondary risk was arguably foreseeable, it remains a step removed from the prototypical failure-to-protect case. If we were to extend *Bivens* here, we would need to make rules on whether liability attaches for secondary risks when an officer is alleged to have been indifferent only to a primary risk. For instance, did Smith's subjective awareness of the risk that Dongarra would be assaulted include the risk that Dongarra might suffer mental anguish or be harmed by his efforts to avoid being assaulted? It is not obvious how far a prison official's liability should extend. If we strike the wrong balance, we could unleash a torrent of litigation on prisons. And unlike state tort damages, the availability of a federal *constitutional* remedy cannot be undone by the legislature. The stakes are high, and we are poorly suited to the task. So we must leave that judgment to Congress.

\* \* \* \* \*

Smith should not have turned a blind eye to the risk that mislabeling Dongarra a sex offender could cause other prisoners to assault him. If he did, he violated Dongarra's Eighth Amendment rights. But Dongarra lacks a remedy. The prison has already issued him a new ID card and T-shirt, so it is too late for administrative and injunctive relief. And *Bivens* damages are unavailable for an assault that never happened. So we will affirm.